

No. 202.3

## EXECUTIVE ORDER

### CONTINUING TEMPORARY SUSPENSION AND MODIFICATION OF LAWS RELATING TO THE DISASTER EMERGENCY

WHEREAS, on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York;

WHEREAS, both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to be continue;

WHEREAS, one state acting alone cannot control the continued spread of this disease and it requires coordination and cooperation amongst the states; and

NOW, THEREFORE, I, Governor Andrew M. Cuomo, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to temporarily suspend or modify any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, or to issue any directive during a disaster emergency necessary to cope with the disaster, I hereby issue the following directives and suspensions and modifications for the period from the date of this Executive Order 202.3 through April 15, 2020:

- The directive requiring large gatherings and events to be cancelled or postponed if they had anticipated attendance in excess of 500 people by virtue of Executive Order 202.1 dated March 12, 2020, is hereby amended and modified to require that any large gathering or event (concert, conference, worship service, performance before a large audience, etc.) shall be cancelled or postponed if more than fifty persons are expected in attendance, at any location in New York State until further notice.

- Any restaurant or bar in the state of New York shall cease serving patrons food or beverage on-premises effective at 8 pm on March 16, 2020, and until further notice shall only serve food or beverage for off-premises consumption. Notwithstanding any provision of the alcohol and beverage control law, a retail on-premises licensee shall be authorized for the duration of this Executive Order to sell alcohol for off-premises consumption, which shall include either take-out or delivery, subject to reasonable limitations set by the State Liquor Authority.

- Any facility authorized to conduct video lottery gaming, or casino gaming shall cease operation effective at 8 pm on March 16, 2020, and until further notice. For a Class III

Tribal Gaming enterprise or Class II Tribal Gaming enterprise, any facility should also close to the public until further notice.

- Any gym, fitness centers or classes, and movie theaters shall also cease operation effective at 8 pm on March 16, 2020 until further notice.

- No local government or political subdivision shall issue any local emergency order or declaration of emergency or disaster inconsistent with, conflicting with or superseding the foregoing directives, or any other executive order issued under Section 24 of the Executive Law and any local emergency order or any local administrative codes, charters, laws, rules or regulations, are hereby suspended with respect to any such order issued under such authority different or in conflict with Executive directives.



G I V E N   under my hand and the Privy Seal of the State in the City of Albany this sixteenth day of March in the year two thousand twenty.

BY THE GOVERNOR

Secretary to the Governor



No. 202.5

## EXECUTIVE ORDER

**Continuing Temporary Suspension and Modification of Laws
Relating to the Disaster Emergency**

**WHEREAS**, on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York;

**WHEREAS**, both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to be continue;

**WHEREAS**, in order to facilitate the most timely and effective response to the COVID 19 emergency disaster, it is critical for New York State to be able to act quickly to gather, coordinate, and deploy goods, services, professionals, and volunteers of all kinds; and

**NOW, THEREFORE**, I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to temporarily suspend or modify any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, I hereby temporarily suspend or modify, for the period from the date of this Executive Order through April 17, 2020 the following:

- Sections 6512 through 6516, and 6524 of the Education Law and Part 60 of Title 8 of the NYCRR, to the extent necessary to allow physicians licensed and in current good standing in any state in the United States to practice medicine in New York State without civil or criminal penalty related to lack of licensure;

- Section 6502 of the Education Law and Part 59.8 of Title 8 of the NYCRR, to the extent necessary to allow physicians licensed and in current good standing in New York State but not registered in New York State to practice in New York State without civil or criminal penalty related to lack of registration;

- Sections 6512 through 6516, and 6905, 6906 and 6910 of the Education Law and Part 64 of Title 8 of the NYCRR, to the extent necessary to allow registered nurses, licensed practical nurses, and nurse practitioners licensed and in current good standing in any state in the United States to practice in New York State without civil or criminal penalty related to lack of licensure;

- Sections 6512 through 6516, and 6541 of the Education Law and Part 60.8 of Title 8 of the NYCRR 8 NYCRR, to the extent necessary to allow physician assistants licensed and in current good standing in any state in the United States to practice in New York State without civil or criminal penalty related to lack of licensure;

- Section 400.12 of Title 10 of the NYCRR, to the extent necessary to allow patients affected by the disaster emergency to be transferred to receiving Article 28 facilities as authorized by the Commissioner of Health;

- Section 415.11 of Title 10 of the NYCRR, to the extent necessary to permit nursing homes receiving individuals affected by the disaster emergency to perform comprehensive assessments of those residents temporarily evacuated to such nursing homes as soon as practicable following admission or to forego such assessments for individuals returned to facilities from which they were evacuated;

- Subdivision b of section 415.15 of Title 10 of the NYCRR, to the extent necessary to permit nursing homes receiving individuals affected by the disaster emergency to obtain physician approvals for admission as soon as practicable following admission or to forego such approval for individuals returned to facilities from which they were evacuated;

- Subdivision i of section 415.26 of Title 10 of the NYCRR, to the extent necessary to permit nursing homes receiving individuals affected by the disaster emergency to comply with admission procedures as soon as practicable following admission or to forego such procedures for individuals returned to facilities from which they were evacuated;

- Paragraph 2 of subdivision g of section 763.4; paragraphs 7 and 8 of subdivision h of section 763.4; paragraph 2 of subdivision a of section 766.5; and paragraph 1 of subdivision d of section 766.5 of Title 10 of the NYCRR, to the extent necessary to permit certified home health agencies, long term home health care programs, AIDS home care programs, and licensed home care services agencies serving individuals affected by the disaster emergency to conduct in-home supervision of home health aides and personal care aides as soon as practicable after the initial service visit, or to permit in-person and in-home supervision to be conducted through indirect means, including by telephone or video communication;

- Subdivision a of section 763.5 of Title 10 of the NYCRR, to the extent necessary to permit initial patient visits for certified home health agencies, long term home health care programs and AIDS home care programs serving individuals affected by the disaster emergency to be made within 48 hours of receipt and acceptance of a community referral or return home from institutional placement;

- Sections 403.3 and 403.5 if Title 10 of the NYCRR, to extend the time in which home care services entities must submit information to the Home Care Worker Registry;

- Sections 358-4.3, 358-5.12 and 358-5.13 of Title 18 of the NYCRR, to the extent necessary to allow or require appearance by any parties to a fair hearing by written, telephonic, video or other electronic means;

- Sections 2999-h and 2999-j of the Public Health Law, to the extent necessary to provide reimbursement to Medical Indemnity Fund enrollees, in primary residences where a resident has had COVID-19 or was exposed to COVID-19, for costs related to cleaning and disinfection of such primary residences, at the discretion of the Commissioner of Health;

- Section 2805-k of the Public Health Law and sections 405.4, 405.5, 405.9, 405.14, 405.19, and 405.22 of Title 10 of the NYCRR, to the extent necessary to allow staff with the necessary professional competency and who are privileged and credentialed to work in a facility in compliance with such section of the Public Health Law and such sections of the NYCRR, or who are privileged and credentialed to work in a facility in another state in compliance with the applicable laws and regulations of that other state, to practice in a facility in New York State;

- Part 405 of Title 10 of the NYCRR, to the extent necessary to adopt existing policies and procedures in a general hospital at a new, temporary facility created for the purpose of treating patients during the COVID-19 outbreak;

- Any code related to construction, energy conservation, or other building code, and all state and local laws, ordinances, and regulations relating to administration and enforcement of the foregoing, to the extent necessary to allow, upon approval by the Commissioner of Health or the Commissioner of OPWDD, as applicable, the temporary changes to physical plant, bed capacities, and services provided; the construction of temporary hospital locations and extensions; the increase in and/or exceeding of certified capacity limits; and the establishment of temporary hospital locations and extensions;

- Part 425 of Title 10 of the NYCRR and section 461-k of the Social Services Law, to the extent necessary to prevent transportation to and attendance at adult day care programs, until authorized by the Commissioner of Health;

- Section 16.17 of the Mental Hygiene Law to the extent necessary to permit the Office of People with Developmental Disabilities to take emergency action to suspend or limit a provider's operating certificate;

- Sections 633.12 and 636-1 of Title 14 of the NYCRR, to the extent necessary to temporarily deviate from an individual's service plan, which would otherwise outline participation in day programming and other community based served, and to the extent necessary to temporarily relocate individuals, in order to maintain the health and safety of that individual during this emergency period and to the extent necessary;

- Sections 33.02 and 33.05 of the Mental Hygiene law and sections 633.4, 636-1.4 and 633.16 of Title 14 of the NYCRR, to the extent necessary to restrict visitors to facilities certified pursuant Article 16 of the Mental Hygiene law and to permit restrictions on community outings for residents of such facilities to reduce the spread of COVID-19;

- Sections 633.8 and 633.14 of Title 14 of the NYCRR to the extent necessary to permit abbreviated training of direct support professionals employed in programs and facilities certified pursuant to Article 16 of the Mental Hygiene Law that are experiencing staff shortages;

- Section 633.17 of Title 14 of the NYCRR, to the extent necessary to permit abbreviated medication administration training of direct support professionals employed in programs or facilities certified pursuant to Article 16 of the Mental Hygiene Law;

- Section 390-b of the Social Services Law and regulations at sections 413.4 and 415.15 of Title 18 of the NYCRR insofar as that statute and those regulations establish background check requirements for child day care;

- Section 390 of the Social Services Law insofar as that section of law exempts school age child care programs operated by a school or entity with experience providing child care and located in a school providing elementary or secondary education from having to comply with the regulations of the office of children and family services;

- Subdivision 7 of section 590 and subdivision 2 of section 607 of the Labor Law, so far as they relate to waiting periods for unemployment insurance claimants whose claims for unemployment insurance arise due to closure of an employer for a reason related to COVID-19 or due to a mandatory order of a government entity duly authorized to issue such order to close such employer, as of March 12, 2020;

- Subdivision b of section 708 of the Business Corporation Law to the extent necessary to permit business corporations to take any action otherwise permitted under that section with the electronic consent of the members of the board or committee, when such consent is submitted via electronic mail along with information from which it can reasonably be determined that the transmission was authorized by such member;

- Sections 65(13)(b) and 66(12)(f) of the Public Service Law to the extent of having in-person public hearings, provided that such hearings are held by conference call or similar electronic means, which are recorded and later transcribed;

- Section 165(1) of the Public Service Law ("PSL") to the extent of holding public statement hearings, provided that the public may file written comments in any case subject to PSL Article 10 until issuance of a final order; and

- Section 123(1) of the Public Service Law ("PSL") to the extent of holding a public hearing, provided that the public may file written comments in any case subject to PSL Article VII until issuance of a final order.

**IN ADDITION**, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to issue any directive during a disaster emergency necessary to cope with the disaster, I hereby issue the following directives for the period from the date of Executive Order through April 17, 2020:

- Any village election set to be held March 18, 2020 shall be postponed and any elected official holding such position shall remain in office until such time as a new election is held.

- Effective at 8 p.m. March 19, 2020, all indoor common portions of retail shopping malls with in excess of 100,000 square feet of retail space available for lease shall close and cease access to the public. Any stores located within shopping malls, which have their own external entrances open to the public, separate from the general mall entrance, may remain open, subject to the requirements of Executive Order 202.3 that any restaurant shall limit itself to take out or delivery food services, and that any interior entrances to common areas of the mall remain closed and locked.

- Additionally, all places of public amusement, whether indoors or outdoors, including but not limited to, locations with amusement rides, carnivals, amusement parks, water parks, aquariums, zoos, arcades, fairs, children's play centers, funplexes, theme parks, bowling alleys, family and children's attractions shall likewise be closed to the public at 8 p.m. on March 19. This directive shall not apply to public parks and open recreation areas.

- Notwithstanding section 24 of the Executive Law, no locality or political subdivision shall issue any local emergency order or executive order with respect to response of COVID-19 without the approval of the State Department of Health.



GIVEN under my hand and the Privy Seal of the State in the City of Albany the eighteenth day of March in the year two thousand twenty.

BY THE GOVERNOR

Secretary to the Governor



No. 202.19

## EXECUTIVE ORDER

### Continuing Temporary Suspension and Modification of Laws Relating to the Disaster Emergency

**WHEREAS**, on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York; and

**WHEREAS**, both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to be continue;

**NOW, THEREFORE**, I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to temporarily suspend or modify any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, I hereby temporarily suspend or modify, for the period from the date of this Executive Order through May 17, 2020 the following:

- Subdivision one of Section 860-b of the Labor Law, to the extent necessary to allow a business that receives federal Paycheck Protection Program funding and subsequently rehires employees, to provide the notice required under this section as soon as practicable but not necessarily within ninety days, provided that a business that receives federal Paycheck Protection Program funding provided the notice required under this section when it initially laid off employees.

**IN ADDITION**, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to issue any directive during a disaster emergency necessary to cope with the disaster, I hereby issue the following directives for the period from the date of this Executive Order through May 17, 2020:

- The Department of Health shall hereby establish a single, statewide coordinated testing prioritization process that shall require all laboratories in the state, both public and private, that conduct COVID-19 diagnostic testing, to complete such COVID-19 diagnostic testing only in accordance with such process. Any such laboratories shall prioritize testing of entities or individuals as directed by this coordinated statewide process. Any such laboratories may not, without an exemption from the Department of Health, enter into an agreement that would reserve testing capabilities for any private or public entity and therefore impede the Departments' ability to prioritize and coordinate COVID-19 testing in New York State. Any violation of this directive may result in a civil penalty not to exceed $10,000 or three times the value of such testing provided in violation of this section, and provided further that the Commissioner is hereby empowered and may revoke any operating certificate or license of such laboratory.

- The directive contained in Executive Order 202.18 requiring any skilled nursing facility, nursing home, or adult care facility licensed and regulated by the Commissioner of Health to notify a family member or next of kin if any resident tests positive for COVID-19, or suffers a COVID-19 related death, within 24 hours is hereby modified solely to provide a penalty for non-compliance of $2,000 per violation per day, as if it were a violation of section 12 of the public health law, and any subsequent violation shall be punishable as if it is a violation of section 12-b of the public health law.

- No local government or local department of health shall take any actions that could affect public health without consulting with the state department of health. No local government official shall take any action that could impede or conflict with any other local government actions, or state actions, with respect to managing the COVID-19 public health emergency.



GIVEN under my hand and the Privy Seal of the

State in the City of Albany this

seventeenth day of April in the year

two thousand twenty.

BY THE GOVERNOR

Secretary to the Governor