UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------  x

REV. STEVEN SOOS, REV. NICHOLAS STAMOS,
JEANETT LIGRESTI, as parent and guardian of infant
plaintiffs, P.L. and G.L., DANIEL SCHONBURN,
ELCHANAN PERR, MAYER MAYERFELD, MORTON
AVIGDOR,

Plaintiffs,

-against-

ANDREW M. CUOMO, Governor of the State of New York, in          20-CV-00651
his official capacity, LETITIA JAMES, Attorney General of the
State of New York in her official capacity, KEITH M.
CORLETT, Superintendent of the New York State Police, in his
official capacity, HOWARD A. ZUCKER, M.D., New York
State Commissioner of Health, in his official capacity, BETTY
A. ROSA, Interim Commissioner of the New York State
Education Department, in her official capacity, EMPIRE STATE
DEVELOPMENT CORPORATION ("ESD"), a New York State
Public Benefit Corporation, BILL DE BLASIO, Mayor of the
City of New York, in his official capacity, DR. DAVE A.
CHOKSHI, New York City Commissioner of Health, in his
official capacity, TERENCE A. MONAHAN, Chief of the New
York City Police Department, in his official capacity, RICHARD
CARRANZA, Chancellor of the New York City Department of
Education in his official capacity,

Defendants.

-----------------------------------------------------------------------  x

**CITY DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

JAMES E. JOHNSON
Corporation Counsel of the
  City of New York
Attorney for City Defendants
100 Church Street
New York, New York 10007

Sheryl Neufeld,
Melanie V. Sadok,
Ellen Parodi,
    *of Counsel.*
October 20, 2020

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......................................................................................... i

DEFENDANTS BILL DE BLASIO, DR. DAVE A. CHOKSHI, TERENCE A. MONAHAN, AND RICHARD CARRANZA'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION ........................................................................... 1

Plaintiffs' Free Exercise of Religion Claim Fails ................................................. 5

The *Jacobson* Standard Applies ....................................................... 5

Plaintiffs are Still Unlikely to Succeed Under a Traditional Free Exercise Standard of review .......................................................... 11

Plaintiffs' Freedom of Speech, Assembly, and Expressive Association Claims Fail ...................................................................................................... 21

Plaintiffs' Equal Protection and Substantive Due Process Claims Fail ............... 24

The Balance of Hardships Tips Decidedly in the City's Favor................... .... 25

The Court Should Not Enter a Civil Order of Contempt against City Defendants……………… ..................................................................... 26

CONCLUSION..................................................................................................... 27

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Pages**

*Able v. United States*, 44 F.3d 128 (2d Cir. 1994) ......................................................... 2

*Adams & Boyle, P.C. v. Slatery*, 956 F.3d 913 (6t Cir. 2020) ...................................... 11

*Agudath Israel of America, et al. v. Cuomo*, 20-cv-4834 (E.D.N.Y. Oct. 9, 2020)................... 1, 4

*Antietam Battlefield KOA v. Hogan*, 2020 U.S. Dist. LEXIS 88883 (D. Md. May 20, 2020) ..... 15

*Ass'n of Jewish Camp Operators v. Cuomo*, 2020 U.S. Dist. LEXIS 117765 (N.D.N.Y. July 6, 2020) ................................................................................................................. passim

*Bery v. City of New York*, 97 F.3d 689 (2d Cir. 1996), *cert. denied*, 520 U.S. 1251 (1997). ......... 2

*Calvary Chapel Dayton Valley v. Sisolak*, 140 S. Ct. 2603 (2020) ................................................ 7

*Calvary Chapel Dayton Valley v. Sisolak*, 2020 U.S. Dist. LEXIS 103234 (D. Nev. June 11, 2020)................................................................................................................. 18

*Cassell v. Snyders*, 2020 U.S. Dist. LEXIS 77512 (N.D. Ill. May 3, 2020) ........................... 13, 19

*Cent. Rabbinical Cong. of the United States v. New York City Dep't of Health & Mental Hygiene*, 763 F.3d 183, 192 (2d. Cir. 2014)................................................................. 2, 12, 19

*Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 532 (1993)...................... passim

*Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778 (2d Cir. 2007) ............................................ 25

*CompassCare v. Cuomo*, U.S. Dist. LEXIS 98930 (N.D.N.Y. June 5, 2020) .............................. 12

*Dark Storm Indus. LLC v. Cuomo,* 2020 U.S. Dist. LEXIS 120514 (N.D.N.Y. July 8, 2020) .... 18

*EEOC v. Local 638*, 753 F. 2d 1172 (2d Cir. 1984). ................................................................... 26

*Elim Romanian Pentecostal Church v. Pritzker*, 962 F.3d 341 (7th Cir. 2020) .......... 16, 17, 18, 19

*Employment Div. v. Smith*, 494 U.S. 872, 876 (1990) ......................................................... 3, 4, 13

*Espinoza v. Mont. Dep't of Revenue*, 140 S. Ct. 2246, 2261 (2020) ............................................. 2

*First Pentecostal Church of Holly Springs v. City of Holly Springs*, 959 F. 3d 669 (5th Cir. 2020)

............................................................................................................................ 11

*Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 545 (1985) ................. 7, 9

*Geller v. Cuomo*, 2020 U.S. Dist. LEXIS 137863 at *28 (S.D.N.Y. Aug. 3, 2020)................ 8, 23

*Gish v. Newsom*, 2020 U.S. Dist. LEXIS 74741 (C.D. Cal. Apr. 23, 2020) ................... 10, 13, 16

*Green v. LaClair*, 2012 U.S. Dist. LEXIS 42876 (N.D.N.Y. 2012)............................................ 24

*High Plains Harvest Church v. Polis*, 2020 U.S. Dist. LEXIS 105247 (D. Col. June 16, 2020). 16

*Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136 (1987) ................................... 12

*Hobbs v. County of Westchester*, 397 F.3d 133, 149 (2d Cir. 2005) ..................................... 21, 22

*In Re Abbott*, 954 F. 3d 772, 784 (5th Cir Apr. 7, 2020) ...................................................... 5, 6, 9

*In re Rutledge*, 956 F.3d 1018 (8th Cir 2020).............................................................................. 6

*Jacobson v. Massachusetts*, 197 U.S. 11, 31, 25 S. Ct. 358, 363 (1905)............................... passim

*Legacy Church, Inc. v. Kunkel*, 2020 U.S. Dist. LEXIS 68415 (D. N.M. Apr. 17, 2020) ..... 19, 24

*Lighthouse Fellowship Church v. Northam*, 2020 U.S. Dist. LEXIS 80289 (E.D. Va. May 1,

2020)................................................................................................................................. 15, 19

*Litzman v. New York City Police Dep't*, 12-CV-4681, 2013 U.S. Dist. LEXIS 162968 (S.D.N.Y.

Nov. 15, 2013)........................................................................................................................ 19

*Luke's Catering Serv., LLC v. Cuomo*, 2020 U.S. Dist. LEXIS 165907 (W.D.N.Y. Sept 10, 2020)

................................................................................................................................... passim

*Martin v. Warren*, 2020 U.S. Dist. LEXIS 154979 (W.D.N.Y. Aug. 26, 2020) ............. 22, 23, 25

*McCarthy v. Cuomo,* 2020 U.S. Dist. LEXIS 107195 *(*E.D.N.Y. June 18, 2020*)*............... 6, 8, 23

*Munaf v. Geren*, 553 US 674 ....................................................................................................... 1

*Murphy v. Lamont*, 2020 U.S. Dist. LEXIS 136961 (D. Conn. Aug. 3, 2020)................ 22, 23, 25

*New York State NOW v. Terry*, 886 F. 2d 1339 (2d Cir. 1989) ...................................................... 26

*Page v. Cuomo*, 2020 U.S. Dist. LEXIS 183769, at *8 (N.D.N.Y. Aug. 11, 2020)................... 6, 8

*Pharaohs GC, Inc. v. United States SBA*, 2020 U.S. Dist. LEXIS 112480 (W.D.N.Y. 2020) ..... 24

*Phillips v. City of New York*, 775  F.3d 538, 543 (2d Cir. 2015).......................................... 6, 9, 12

*Plaza Health Labs., Inc. v. Perales*, 878 F.2d 577, 580 (2d Cir. 1989)........................................ 2

*Prince v. Massachusetts*, 321 U.S. 158, 166-67 (1944).................................................................. 4

*Reynolds v. United States*, 98 U.S. 145. 166-167 (1879)................................................................ 4

*Roberts v. Neace*, 958 F. 3d 409 (6th Cir. 2020) .................................................................... 11, 13

*Robinson v. AG*, 957 F.3d 1171 (11th Cir. 2020) ......................................................................... 11

*Robinson v. Murphy*, 2020 U.S. Dist. LEXIS 185070 (D. N.J. Oct. 2, 2020) .............................. 19

*Roman Catholic Diocese of Brooklyn, NY v. Cuomo*, 20-cv-4844, at 19 (E.D.N.Y. Oct. 16, 2020)
............................................................................................................................................ passim

*Rother v. NYS Dep't of Correction and Community Supervision*, 970 F. Supp. 2d 78 (N.D.N.Y.
2013)..................................................................................................................................... 25

*See Geller  v. de Blasio*, 2020 U.S. Dist. LEXIS 87405 (S.D.N.Y. May 18, 2020).............. 22, 23

*Soos v. Cuomo*, 2020 U.S. Dist. LEXIS 111808 (N.D.N.Y. June 26, 2020)............... 9, 10, 17, 20

*South Bay United Pentecostal v. Newsom*, 140 S. Ct. 1613 (May 29, 2020) ....................... passim

*St. John's United Church of Christ v. City of Chicago*, 502 F. 3d 616 (7th Cir. 2006) .............. 24

*Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995)..................... 2

*Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012 (2017)........................... 13

*Trump v. Deutsche Bank AG*, 943 F.3d 627, 637-640 (2d Cir. 2019) ............................................ 2

*United States v. N.Y. City Dist. Council of N.Y.C.*, 229 Fed. Appx. 14 (2d Cir. 2007) ............... 26

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) ................................................................... 22

iii

*Whitsitt v. Newsom,* 2020 U.S. Dist. LEXIS 150400 (E.D. Ca. Aug. 19, 2020) ......................... 13

**<u>Other Authorities</u>**

"De Blasio warns against violence after Cuomo's new virus rules enrage the Orthodox

    community," Politico, October 8, 2020, *available at*

    https://www.politico.com/news/2020/10/08/de-blasio-cuomo-orthodox-427847 (last visited

    Oct. 19, 2020)................................................................................................................. 18

"Governor Cuomo Announces Indoor Dining in New York City Allowed to Resume Beginning

    September 30 with 25 Percent Occupancy Limit," New York State, *also available at*

    https://www.governor.ny.gov/news/governor-cuomo-announces-indoor-dining-new-york-city-

    allowed-resume-beginning-september-30-25 (last visited Oct. 19, 2020)............................... 16

"Interim Guidance for In-Person Instruction at Pre-K to Grade 12 Schools," New York State,

    *also available at* https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/Pre-

    K_to_Grade_12_Schools_MasterGuidance.pdf (last visited Oct. 20, 2020). .................... 16, 17

"Interim Guidance for Low-Risk Indoor Arts & Entertainment During the COVID-19 Public

    Helath Emergency," New York State, *also available at*

    https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/Lowriskindoorartsandent

    ertainment-MasterGuidance.pdf (last visited Oct. 19, 2020). .................................................. 16

New York State Executive Order No. 202.3................................................................................. 3

New York State Executive Order No. 202.5................................................................................. 3

New York State Executive Order No. 202.19............................................................................... 3

New York State Executive Order No. 202.68………………….………………………...passim

"Phase Two Industries," New York State, *also available at* https://forward.ny.gov/phase-two-

    industries (last visited Oct. 19, 2020)…………………….…………………………….........17

"Reopening New York: Guidelines for In-Person Instruction at Pre-K to Grade 12 Schools," New York State, *also available at* https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/P12_EDU_Summary_Guidelines.pdf (last visited Oct. 19, 2020) ............................................................................ 16, 17

"Reopening New York: Guidelines for Religious and Funeral Services," New York State, *also available at* https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/ReligiousandFuneralServicesSummaryGuidance.pdf (last visited Oct. 19, 2020)........................................................... 21

**DEFENDANTS BILL DE BLASIO, DR. DAVE A. CHOKSHI, TERENCE A. MONAHAN, AND RICHARD CARRANZA'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Defendants Mayor Bill de Blasio, Dr. Dave A. Chokshi, Terence A. Monahan, and Richard Carranza (collectively "City Defendants"), submit this memorandum of law in opposition to Plaintiffs' motion for a temporary restraining order/preliminary injunction enjoining enforcement of New York State Executive Order 202.68 (the "subject Order"), which directs the State Department of Health to determine areas in the State that require enhanced public health restrictions due to severe increases in the number of COVID-19 cases and imposing mitigating measures in those areas (or "zones").[1] To date, at least two applications for TROs and Preliminary Injunctions seeking to stay the subject Order have been denied. *See Roman Catholic Diocese of Brooklyn, NY v. Cuomo*, 20-cv-4844, at 19 (E.D.N.Y. Oct. 16, 2020)[2]; *Agudath Israel of America, et al. v. Cuomo*, 20-cv-4834 (E.D.N.Y. Oct. 9, 2020), annexed to the Declaration of Ellen Parodi, dated October 20, 2020 ("Parodi Dec.) as Exhibits "3" and "10," respectively.

"A preliminary injunction is an 'extraordinary and drastic remedy' . . . ; it is never awarded as of right . . . ." *Munaf v. Geren*, 553 U.S. 674 (2008) (internal citations omitted); a*ccord Ass'n of Jewish Camp Operators v. Cuomo*, 2020 U.S. Dist. LEXIS 117765 at *12 (N.D.N.Y. July 6, 2020). In order to establish their entitlement to a preliminary injunction against government action taken in the public interest, Plaintiffs must establish (1) that they will

---

[1] Plaintiffs' characterization of the subject Order as providing that "anyone who promotes, organizes, or even *encourages* a prohibited religious gatherings shall be subject to a civil fine of up to $15,000 *per day*" is misleading. *See* Pls. Memo at 4–5 (emphases in original). The subject Order clearly states that any individual who encourages, promotes or organizes a non-essential gathering—of *any* sort—shall be liable for a $15,000 civil penalty. *See* Parodi Dec. Ex. "2."

[2] An application for a TRO was also denied on October 9, 2020.

be irreparably injured if the relief sought is not granted; (2) that they are likely to succeed on the merits of their claims; (3) that a balance of the hardships tips decidedly in their favor; and (4) that an injunction would be in the public interest. *See Trump v. Deutsche Bank AG*, 943 F.3d 627, 637-640 (2d Cir. 2019) (citations omitted), *vacated on other grounds by Trump v. Mazars USA, LLP,* 140 S. Ct. 2019 (2020); *Cent. Rabbinical Cong. of the United States v. New York City Dep't of Health & Mental Hygiene*, 763 F.3d 183, 192 (2d. Cir. 2014); *Plaza Health Labs., Inc. v. Perales*, 878 F.2d 577, 580 (2d Cir. 1989). *See also Bery v. City of New York*, 97 F.3d 689 (2d Cir. 1996), *cert. denied*, 520 U.S. 1251 (1997). Where a movant seeks a preliminary injunction that would provide the ultimate relief sought in the underlying action, a heightened standard applies. *See Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995). "[G]overnmental policies implemented through legislation or regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly." *Able v. United States*, 44 F.3d 128, 131 (2d Cir. 1994).

Plaintiffs here allege that the subject Order violates the Free Exercise Clause,[3] because the subject Order imposes restrictions on houses of worship and requires religious schools to be

---

[3] Plaintiffs also allege the subject Order violates their rights to free speech and assembly, as well as their right to equal protection and substantive due process. Plaintiffs further allude to a claim that their right to direct the education and religious upbringing of their children has been infringed. However, Plaintiffs have not actually plead this due process claim. However, even if they were to assert such claim, they have failed to establish that City Defendants infringed on such right in an arbitrary manner. *See Espinoza v. Mont. Dep't of Revenue*, 140 S. Ct. 2246, 2261 (2020) (recognizing a parent's right to direct the religious upbringing of their children). The restrictions in the subject order—including the closure of schools in "red zones" and "orange zones"—is not arbitrary, but instead aimed at the prevention of the spread of COVID-19. *See Ass'n of Jewish Camp Operators*, 2020 U.S. Dist. LEXIS 117765, at *53; While schools are closed for in person learning, those schools may still offer virtual learning. Finally, to the extent Plaintiffs' education arguments may be construed as asserting a "hybrid" claim under a combination of the Free Exercise Clause and the Due Process Clause, such a claim similarly fails, as Plaintiffs have failed to show that the subject Order violates the Free Exercise Clause, nor have they shown that the subject Order violates their right to control the education and upbringing of their children. *See also Roman Catholic Diocese of Brooklyn, NY v. Cuomo*, 20-cv-4844, at 19 (E.D.N.Y. Oct. 16, 2020), annexed to the Parodi Dec. as Ex. "3" (denying motion for preliminary injunction against the subject Order).

closed. They are not likely to succeed on the merits of their claims.[4] "The free exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires." *Employment Div. v. Smith*, 494 U.S. 872, 876 (1990). The Free Exercise Clause protects against laws that "discriminate[] against some or all religious beliefs or regulate[] or prohibit[] conduct because it is undertaken for religious reasons." *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 532 (1993). Despite Plaintiffs' best efforts to twist the Governor's executive orders into an attack on religion, it is undisputable that the executive orders generally, and the subject Order specifically, are directed at preventing the spread of COVID-19. The executive orders affect every part of society—including but not limited to, businesses, schools, offices, restaurants, entertainment, gyms, salons, weddings, funerals, social gatherings, and religious gatherings. After months of a careful staged reopening, the subject Order is necessary to address cluster hot-spots that have increased positivity rates, which, if not reduced and contained, threaten to undermine the progress made in controlling the spread of COVID-19. Rather than waiting until the positivity rate increases citywide to return to stricter limitations (thereby allowing more people to die and suffer the short-term and long-term effects of COVID-19), the subject Order takes a proactive and targeted approach by imposing greater restrictions in limited zones where infection rates have sharply risen.

---

[4] In actuality, Plaintiffs have not alleged any claims against the City Defendants. The Original Complaint asserts that the "Challenged Regulations", which are defined as Governor Cuomo's various Executive Orders, violates their rights. The First Amended Complaint ("FAC") alleges that the subject Order violates Plaintiffs rights. None of the executive orders challenged have been issued by the City. In fact, there are three New York State Executive Orders that restrict local governments from acting inconsistently with, or without approval of, the state government. New York State Executive Order No. 202.3 states that "[n]o local government or political subdivision shall issue any local emergency order or declaration of emergency or disaster inconsistent with, conflicting with or superseding the foregoing directives, or any other executive order issued under Section 24 of the Executive Law . . . ." *See* Parodi Dec. Ex. "1." New York State Executive Order No. 202.5 states that "no locality or political subdivision shall issue any local emergency order or executive order with respect to response of COVID-19 without the approval of the State Department of Health." *See id.* New York State Executive Order No. 202.19 states that "[n]o local government official shall take any action that could impede or conflict with any other local government actions, or state actions, with respect to managing the COVID-19 public health emergency." *See id.*

It is shocking that Plaintiffs even attempt to argue that the executive orders, and the subject Order in particular, are not about stopping the spread of COVID-19 but are instead intended to suppress the practice of religion and discriminate against people who observe and practice their religion. COVID-19 is a worldwide pandemic—it affects people of every race, religion, and ethnicity around the world. Steps to prevent the spread of COVID-19 likewise affect people of every race, religion and ethnicity. That the burden may happen to fall greater on a community at a particular point in time, is not the targeting of such community because of its religious beliefs or practices. *See Roman Catholic Diocese*, 20-cv-4844, at 19 (denying motion for preliminary injunction against the subject Order), annexed to the Parodi Dec. as Ex. "3." While Plaintiffs cannot exercise their religion in their ideal manner,"'[n]ot all burdens on religion are unconstitutional.'" *Id.* (quoting *Bowen v. Roy* (1986)). In times of emergency, executive officials must have broad discretion "to act in areas fraught with medical and scientific uncertainties." *South Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613 (2020) (Roberts, C.J., concurring in denial of application for injunctive relief) (quoting *Marshall* v. *United States*, 414 U.S. 417, 427 (1974)). And the "[Supreme Court has] never held that an individual's religious beliefs excuse him from compliance with an otherwise valid law prohibiting conduct that the State is free to regulate." *Smith*, 494 U.S at 878-79. Laws "'are made for the government of actions, and while they cannot interfere with mere religious belief and opinions, they may with practices.'" *Id.* (quoting *Reynolds v. United States*, 98 U.S. 145. 166-167 (1879)). Indeed, it has been long established that "[t]he right to practice religion freely does not include liberty to expose the community...to communicable disease or...to ill health or death." *Prince v. Massachusetts*, 321 U.S. 158, 166-67 (1944). Thus, Plaintiffs are not likely to succeed on the merits of their claim and the motion should be denied. *See Agudath Israel of*

*America,* 20-cv-4834 (E.D.N.Y. Oct. 9, 2020) (denying application for TRO and preliminary injunction to enjoin the subject Order on the grounds that plaintiffs failed to show, among other things, a likelihood of success on the merits of their Free Exercise Clause challenge); *Roman Catholic Diocese of Brooklyn,*, No. 20-cv-4844 (E.D.N.Y. Oct. 16, 2020) (denying application for a preliminary injunction to enjoin the subject Order on Free Exercise grounds).[5]

**A.      Plaintiffs' Free Exercise of Religion Claim Fails**

**1.      The *Jacobson* Standard Applies**

As early as 1905, the Supreme Court, in the seminal case *Jacobson v. Massachusetts*, 197 U.S. 11, 31, 25 S. Ct. 358, 363 (1905), acknowledged that "[t]he possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed by the governing authority of the country essential to the safety, health, peace, good order, and morals of the community." *Jacobson*, 197 U.S. at 26. In *Jacobson*, the Supreme Court set forth a deferential standard when reviewing a statute "purporting to have been enacted to protect the public health, the public morals or the public safety," but which allegedly violates a fundamental right. *Jacobson*, 197 U.S. at 31. Thus, such statute must not be disturbed unless it "has no real or substantial relation to those objects, or is, beyond all question, a plain, palpable invasion of rights secured by the fundamental law..." *Id*. In other words, "this review [is] asking whether power had been exercised in an 'arbitrary, unreasonable manner,' or through 'arbitrary and oppressive' regulations." *In Re Abbott*, 954 F. 3d 772, 784 (5th Cir Apr. 7, 2020) (quoting *Jacobson* at 28, 38).

---

[5] Although this Court previously held that Plaintiffs were likely to succeed on the merits of their free exercise claim, the circumstances have changed. Significantly, the positivity rate has increased, mass protests are no longer occurring, the new limitations are limited only to those areas with sharp increases in the positivity rates, and gatherings in houses of worship are given more favorable treatment than many other non-essential services.

Contrary to Plaintiffs' assertion that *Jacobson* does not apply to claims raised under the Free Exercise and Free Speech Clauses, the Second Circuit has adopted the *Jacobson* standard with regard to First Amendment rights. *See Phillips v. City of New York*, 775  F.3d 538, 543 (2d Cir. 2015) (stating it was following the *Jacobson* reasoning when concluding that a mandatory vaccination policy did not violate the free exercise clause of the first amendment). Significantly, courts across the nation, including the N.D.N.Y., have applied the *Jacobson* "real or substantial relation" standard when addressing challenges to orders curtailing an individual's constitution rights during the COVID-19 pandemic. *See In Re Abbott*, 954 F. 3d 772 (5th Cir 2020) (finding that "the district court's refusal to acknowledge or apply *Jacobson*'s legal framework produced a 'patently erroneous' result"); *In re Rutledge*, 956 F.3d 1018 (8th Cir 2020) (finding that "the district court's failure to apply the *Jacobson* framework produced a patently erroneous result"); *Ass'n of Jewish Camp Operators v. Cuomo*, 2020 U.S. Dist. LEXIS 117765 (N.D.N.Y. July 6, 2020) (finding that "[b]ecause Plaintiffs' challenge public health measures issued to address the outbreak of a deadly disease, the Court joins the many courts throughout the country that rely on *Jacobson*….") (collecting cases); *Luke's Catering Serv., LLC v. Cuomo*, 2020 U.S. Dist. LEXIS 165907 (W.D.N.Y. Sept 10, 2020) (finding that the "State's emergency measures are…subject to *Jacobson* review); *Page v. Cuomo*, 2020 U.S. Dist. LEXIS 183769, at *8 (N.D.N.Y. Aug. 11, 2020) (applying *Jacobson* and noting that while *Jacobson* has its detractors, "courts across the country have nearly uniformly relied on *Jacobson's* framework to analyze emergency public health measures put in place to curb the spread of coronavirus"); *McCarthy v. Cuomo,* 2020 U.S. Dist. LEXIS 107195 (E.D.N.Y. June 18, 2020) (collecting cases).

In fact, the Supreme Court recently denied an application for preliminary injunctive relief pending appeal of a free exercise challenge to a California order limiting religious gatherings to

25% of building capacity, or a maximum of 100 people due to COVID-19. Chief Justice Roberts

relied upon and quoted *Jacobson* in his concurrence articulating the deferential standard that

should be applied to free exercise challenges during this pandemic. *See South Bay United*

*Pentecostal v. Newsom*, 140 S. Ct. 1613 (May 29, 2020); s*ee also Ass'n of Jewish Camp*

*Operators* 2020 U.S. Dist. LEXIS 117765, at *53. Chief Justice Roberts explained:

> The precise question of when restrictions on
> particular social activities should be lifted during
> the pandemic is a dynamic and fact-intensive matter
> subject to reasonable disagreement. Our
> Constitution principally entrusts "[t]he safety and
> the health of the people to the politically
> accountable officials of the States "to guard and
> protect." *Jacobson v. Massachusetts*, 197 U.S. 11,
> 38 (1905). When those officials "undertake[] to act
> in areas fraught with medical and scientific
> uncertainties," their latitude "must be especially
> broad." *Marshall v. United States*, 414 U.S. 417,
> 427 (1974). Where those broad limits are not
> exceeded, they should not be subject to second-
> guessing by an "unelected federal judiciary," which
> lacks the background, competence, and expertise to
> assess public health and is not accountable to the
> people. See *Garcia v. San Antonio Metropolitan
> Transit Authority*, 469 U.S. 528, 545 (1985).

*South Bay United Pentecostal v. Newsom*, 2020 WL 2813056 at *1, 590 U.S. __ (May 29, 2020).

*See also Calvary Chapel Dayton Valley v. Sisolak*, 140 S. Ct. 2603 (2020) (denying application

for injunctive relief pending appeal on Nevada's restrictions on religious services during the

COVID-19 pandemic). Thus, it is well-established that the deferential standard set forth in

*Jacobson* is applicable to claims alleging that a law enacted to protect the public health violates

First Amendment rights.

Here, there is no doubt that the subject Order has a "real or substantial relation" to reducing the spread of COVID-19, during a pandemic that has resulted in the confirmed death of over 19,000 New Yorkers over the past seven months. *See Ass'n of Jewish Camp Operators*, 2020 U.S. Dist. LEXIS 117765, at *22; *McCarthy v. Cuomo,* 2020 U.S. Dist. LEXIS 107195, at *9; *Page v. Cuomo*, 2020 U.S. Dist. LEXIS 183769, at *21. *Luke's*, 2020 U.S. Dist. LEXIS 165907 at *35 (citing to *Santore v. Cuomo*, 1:20-CV-850, Docket No. 14, p. 15 (N.D.N.Y. Aug. 14, 2020) for its holding that "gathering limits are emergency measures which, even if they did curtail constitutional rights, have a 'real or substantial' relation to the public health crisis"); *Geller v. Cuomo*, 2020 U.S. Dist. LEXIS 137863 at *28 (S.D.N.Y. Aug. 3, 2020). The subject Order applies to limited areas in the State and City that have seen a significant increase in the COVID-19 positivity rate, and thus pose a threat to the public health. Although the citywide positivity rate is approximately 1%, some of these cluster hot-spots have had positivity rates of up to almost 8%, and, if not contained and mitigated, threaten the success the State and City have had in reducing the positivity rate.[6] *See* Declaration of Dr. Jay Varma, dated October 20, 2020 (hereinafter "Varma Dec.") ¶ 25. It cannot be forgotten that this success was due to the gathering limitations and closure of businesses, which indisputably resulted in, in significant economic, social and emotional hardship in our City and State, but were also critical to slowing the spread of the virus. The subject Order is a proactive approach to preventing the spread of COVID-19 so that we do not return to circumstances in which thousands of people become infected on a daily basis, potentially overwhelming our health care system and resulting in a significant loss of life. Moreover, the temporary roll-back of reopening in these zones will help avoid the roll-back of

---

[6] Plaintiffs' attempt to portray the rise in cases as unproblematic on the grounds that it involves people who are asymptomatic misses the mark. Pls. Memo at 2-3.  To the contrary, asymptomatic people pose a significant risk of transmission because those who have not been tested do not know to take precautions.  *See* Varma Dec. ¶ 6, fn. 1.

reopening across the City, and help prevent the associated economic, social and emotional hardship.

While Plaintiffs argue, without a strong basis,[7] that there is "no longer any rational or factual basis for perpetuating a state of 'disaster emergency,'" FAC ¶ 41, the Court's limited review under *Jacobson*, "does not permit courts to pass judgment on the 'wisdom and efficacy' of the emergency measures implemented." *Luke's Catering Serv., LLC v. Cuomo*, No. 20-CV-1086S, 2020 U.S. Dist. LEXIS 165907, at *17 (W.D.N.Y. Sep. 10, 2020) (quoting *In re Abbott*, 954 F.3d at 783). *See also Phillips*, 775 F.3d at 542 (rejecting the plaintiffs' argument regarding the scientific evidence related to vaccines, explaining "as *Jacobson* made clear, that is a determination for the legislature, not the individual objectors."). Determinations regarding how to best protect the public health, even when First Amendment rights, including the free exercise of religion, have allegedly been infringed upon, "should not be subject to second-guessing by an 'unelected federal judiciary which lacks the background, competence, and expertise to assess public health and is not accountable to the people'" *South Bay*, 140 S. Ct. at 1614 (citing *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 545 (1985)). Indeed, this Court recognized in its June 26, 2020 order granting Plaintiffs' first motion for a preliminary injunction that the Supreme Court in *South Bay* "instructs courts to refrain from Monday-morning quarterbacking the other co-equal, elected branches of government when those branches are responding to difficulties beyond those that are incidental to ordinary governance." *Soos v.*

---

[7] Several of the plaintiffs submitted declarations in support of this motion stating that there is no outbreak in their neighborhood, merely based upon their observations or what they have heard. One plaintiff appears to have examined NYC data in an attempt to make a case that there is no basis for the subject Order. *See* Declaration of Jeanette Ligresti. However, none of these plaintiffs identified themselves as having any expertise in public health. Even if they had such expertise, as discussed above, the law is clear that the Court must not second guess such public health determinations and must defer to the elected officials.

*Cuomo*, 2020 U.S. Dist. LEXIS 111808, at *21 (N.D.N.Y. June 26, 2020) (ECF Doc. 35).[8] Thus, Plaintiffs' unsupported allegations should be disregarded by this Court.

There is also no doubt that the subject Order is not "arbitrary or oppressive."  The subject Order is directed at specific areas with increased positivity rates that the State Department of Health determined in its expertise create a risk for the spread of COVID-19. While the subject Order prohibits non-essential gatherings of any size in "red zones" (the areas with the largest increase in positive COVID-19 test rates), for houses of worship, it allows occupancy up to 25% of the maximum occupancy of the site or 10 persons, whichever is fewer. *See* Parodi Dec. Ex. "2." The orange zone (the warning zone) allows up to 33% capacity or 25 people, whichever is fewer. However, in an abundance of caution to comply with this Court's preliminary injunction, *see* ECF Doc. 55, the City is not taking enforcement action against houses of worship in the orange zone unless they are at greater than 50% capacity.[9]  The "requisite *minyan* [ten persons] can attend services" in the red zone.[10] FAC at ¶ 130. Thus, the subject Order leaves opportunity for religious worship.[11]

While Plaintiffs argue that the religious worship authorized under the subject Order is not sufficient, "[t]he Constitution does not guarantee 'an absolute right in each person to be, at all times and in all circumstances, wholly freed from restraint.'" *Gish v. Newsom*, 2020 U.S. Dist. LEXIS 74741, at *13 (C.D. Cal. Apr. 23, 2020) (quoting *Jacobson*, 197 U.S. at 26). *See also Jacobson*, 197 U.S. at 25 ("the police power of a State must be held to embrace, at least, such reasonable regulations established directly by legislative enactment as will protect the public health and the public safety"). Thus, even if the subject Order infringed upon Plaintiffs' ability to

---

[8] The circumstances that led this Court to grant the preliminary injunction are not present here.
[9] The City believes that the subject Order (and 33% capacity in houses of worship in the orange zones) is constitutional and in the best interest of the public health. *See* Varma Dec. ¶ 11, fn. 9.
[10] If 25% capacity is less than 10 people, a minyan may not be possible.
[11] While all school buildings must be closed in the red and orange zones, virtual learning may occur.

fully exercise their religion, as it has a real and substantial relation to responding to stopping the spread of COVID-19, and is neither arbitrary nor oppressive, such infringement is not unconstitutional.

Moreover, the cases Plaintiffs rely upon in support of their argument that the subject Order exceeds the broad limits of *Jacobson* deference are inapposite. In *First Pentecostal*, the Fifth Circuit did not undertake any free exercise analysis whatsoever. *See First Pentecostal Church of Holly Springs v. City of Holly Springs*, 959 F. 3d 669 (5th Cir. 2020). In *Roberts v. Neace*, the Sixth Circuit undertook a traditional free exercise analysis, finding that the challenged order was not generally applicable due to too many exceptions. *See Roberts v. Neace*, 958 F. 3d 409 (6th Cir. 2020). *Roberts* was also decided before Chief Justice Roberts relied on *Jacobson* in his concurring opinion in *South Bay*. While *Robinson* and *Adams & Boyle P.C.* do address *Jacobson*, they are not free exercise cases. *See Robinson v. AG*, 957 F.3d 1171 (11th Cir. 2020); *Adams & Boyle, P.C. v. Slatery*, 956 F.3d 913 (6t Cir. 2020). In both of these cases, the Courts found *Jacobson's* "broad limits" were exceeded because the orders in question would have prohibited a woman's right to an abortion altogether. *See Robinson*, 957 F. 3d at 1183; *Adams & Boyle*, 956 F.3d at 926. Here, even in the red zones religious worship is permitted, including communal worship, albeit in limited numbers, and school may continue remotely. Accordingly, the subject Order passes the *Jacobson* test and thus Plaintiffs are not likely to succeed on the merits of their Free Exercise claim.

## 2. Plaintiffs are Still Unlikely to Succeed Under a Traditional Free Exercise Standard of Review

While the *Jacobson* standard is the appropriate standard to apply in circumstances where there is a law enacted in the interest of public health, as is the case here, even if the Court were to disagree, Plaintiffs' free exercise claim still fails as a matter of law under the traditional standard

of review. It is well established that "a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Phillips v. City of New York*, 775 F.3d 538 (2d Cir. 2015)(quoting *Church of the Lukumi*, 508 U.S. at 531). In examining neutrality, one first looks at the plain text of the law. *Cent. Rabbinical*, 763 F.3d at 193. However, "[a facially] neutral law that target[s] the practices of a particular religion is not neutral." (internal quotations removed). *CompassCare v. Cuomo*, U.S. Dist. LEXIS 98930, at *49-50 (N.D.N.Y. June 5, 2020).

"The general applicability requirement prohibits the government from 'in a selective manner impos[ing] burdens only on conduct motivated by religious belief.'" *Cent. Rabbinical*, 763 F.3d at 196 (quoting *Church of Lukumi*, 508 U.S. at 543). "It 'protect[s] religious observers against unequal treatment', and inequality [that] results when a legislature decides that the governmental interests it seeks to advance are worthy of being pursued only against conduct with a religious motivation.'" *Church of Lukumi,* 508 U.S. at 542-43 (quoting *Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136, 148 (1987)).

Here, the rational basis test is applicable because the subject Order is neutral and generally applicable. The subject Order regulates all gatherings, businesses and organizations, in the respective zones, whether they serve a religious or secular purpose. Indeed, Plaintiffs concede that the COVID-19 executive orders have been "imposed" on "virtually every aspect of the social, political, religious, and economic life of New York's 8.3 million residents." Complaint ¶ 15. *See also* FAC ¶ 203. The "object" of the subject Order "is [not] to infringe upon or restrict practices because of their religious motivation..." *Church of Lukumi* 508 U.S. at 533. Thus, the subject Order is facially neutral and generally applicable. Plaintiffs' attempt to demonstrate otherwise fails.

12

Plaintiffs argue that the subject Order is not neutral because it targets religious practice by "singling out "houses of worship" for completely unique burdens." Pls. Memo at 8. Plaintiffs' "evidence" is that the subject Order mentions houses of worship and sets forth unique regulations for houses of worship. Such argument flies in the face of reason and is unsupported by the law. Simply because "houses of worship" are specifically mentioned in the subject Order does not mean that religious practice is being targeted for discrimination. *See Roberts v. Neace,* 958 F. 3d 409 (6th Cir. 2020) (nothing that the fact that regulations "prohibit 'faith-based' mass gatherings by name" "does not suffice by itself to show that the Governor singled out faith groups for disparate treatment"); *Roman Catholic Diocese of Brooklyn, NY v. Cuomo*, 20-cv-4844, at 19, annexed to the Parodi Dec. as Ex. "3" (finding, where the plaintiffs challenge the subject Order, that rational basis test applied even though the subject Order established rules specific to religious gatherings, as it "[did] so because they are gathering, not because they are religious."); *Whitsitt v. Newsom,* 2020 U.S. Dist. LEXIS 150400 (E.D. Ca. Aug. 19, 2020) (dismissing a complaint alleging a California COVID-19 order violated the Free Exercise Clause); *Cassell v. Snyders*, 2020 U.S. Dist. LEXIS 77512 (N.D. Ill. May 3, 2020) (rejecting a Free Exercise Clause challenge to Illinois' limit on gathering to no more than ten people, as the limit was neutral and generally applicable, even where religious services were listed in the state's order). "Facial neutrality does not require freedom from any mention of religion, instead 'the minimum requirement of neutrality is that a law not *discriminate* on its face.'" *Gish* 2020 U.S. Dist. LEXIS 74741, at *17 (quoting *Church of Lukumi*, 508 U.S at 533) (emphasis included).

Moreover, no "'special disabilities on the basis of religious views or religious status'" *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2021 (2017) (quoting *Smith.*, 494 U. S. at 877) have been imposed on houses of worship. In fact, the opposite is true.

The subject order requires all non-essential businesses to close in red zones, while houses of worship are authorized to remain open in a limited manner. In orange zones, certain high-risk non-essential businesses must close, whereas houses of worship are able to expand their limited opening. .").  In fact, the subject Order treats houses of worship better than the gatherings Chief Justice Roberts indicated were comparable secular gatherings (i.e. lectures, concerts, movie showings, spectator sports, and theatrical performances.) *See South Bay*, 140 S.Ct. at 1613. Thus, there are no "unique burdens" being imposed on houses of worship—only unique benefits. *See Roman Catholic Diocese of Brooklyn, NY*, 20-cv-4844, at 19 and 22 (finding that the subject Order treats houses of worship "as well or better than comparable gatherings

Plaintiffs' argument that Governor Cuomo's statements about houses of worship, the Orthodox Jewish community, and Orthodox Jewish schools demonstrate that religion has been targeted likewise fails.[12]  "[T]he Governor's public comments do not transform a neutral law into a religiously targeted one." *Roman Catholic Diocese*, 20-cv-4844, at 20. The areas in which many Orthodox Jewish communities live currently have increased positivity rates notwithstanding the original limitations on gatherings and indoor occupancy of establishments. It makes sense to impose stricter regulations and enforcement to reduce those rates. As Dr. Varma, Mayor de Blasio's Senior Advisor for Public Health, explained "occupancy restrictions need to be stricter in houses of worship than other indoor settings that may remain open..." *See* Varma Dec. ¶ 14. Gatherings in houses of worship have resulted in large outbreaks, or super-spreading events. *See* Varma Dec. ¶ 17. Further, "[a]llowing schools to be open would result in people

---

[12] To the extent Plaintiffs are claiming that subject Order is not being applied neutrally to religious schools, such argument lacks merit. *See* Pls. Memo at 5. The subject Order's restrictions on schools apply to all schools in the affected zones—regardless whether those schools are religious schools or secular schools. *See* Parodi Dec. Ex. "2." Defendant Cuomo's alleged "intention" to regulate religious schools is irrelevant, as what is at issue is whether religious schools suffer a greater burden compared to secular schools because of their religious practice. As both secular and religious schools must be closed, the religious schools do not suffer a greater burden than the secular schools.

from all over the City entering high and moderate risk communities, which is counterproductive to the zoned mitigation approach." *See* Varma Dec. ¶ 21. While Plaintiffs claim that no "outbreak" has occurred in their houses of worship or schools, the government should not have to wait for an outbreak or super-spreader event to occur to justify the imposition of stricter limitations on riskier activities. The government must be able to use its expertise and knowledge to assess the risk (by looking at positivity rates among other factors) and take proactive steps to avoid super-spreader events and the spread of COVID-19, as they have done here. Thus, Plaintiffs are unable to establish that the subject Order is not neutral.

Plaintiffs' argument that the subject Order is not generally applicable also fails. Contrary to Plaintiffs' assertion, the subject Order is not underinclusive because essential services (such as factories and congregate homeless shelters), which Plaintiffs claim pose a similar risk to the spread of COVID-19, are not subject to restrictions under the subject Order. *See Lighthouse Fellowship Church v. Northam*, 2020 U.S. Dist. LEXIS 80289, at *20-25 (E.D. Va. May 1, 2020). Such argument fails for three key reasons. First, Plaintiffs fail to provide any support for their conclusion that factories, warehouses, homeless shelters and congregate housing pose the same risk as houses of worship. Moreover, because of the number of variables involved, "it is not scientifically valid to calculate a mathematical risk for all types of factories, warehouses or congregate settings and for all services held within houses of worship and compare the two." *See* Varma Dec. ¶ 19 fn 15.

Second, Plaintiffs are using the incorrect comparator to assess underinclusivity. It is well-settled that "an exemption is not by itself determinative [of lack of general applicability], the individualized exemptions must also be properly comparable to the challenged action, suggesting discrimination." *Ass'n of Jewish Camp Operators,* 2020 U.S. Dist. LEXIS 117765 at *42;

15

*Antietam Battlefield KOA v. Hogan*, 2020 U.S. Dist. LEXIS 88883 at *21-22 (D. Md. May 20, 2020) (discussing that the proper comparison is with comparable secular activities and distinguishing religious services from essential services and retail). As Chief Justice Roberts stated,  "comparable secular gatherings include[e] lectures, concerts, movie showings, spectator sports, and theatrical performances[.]" *South Bay*, 140 S. Ct. at 1613; *see Elim Romanian,* 962 F.3d at 346; *Gish,* 2020 U.S. Dist. LEXIS 74741, at *20; *High Plains Harvest Church v. Polis*, 2020 U.S. Dist. LEXIS 105247, at *4-5 (D. Col. June 16, 2020) (denying a church-plaintiff's request for a temporary restraining order where there was no evidence that challenged protests were "comparable secular gatherings"); Varma Dec. ¶ 20. Chief Justice Roberts explained his rationale for deeming the aforementioned gatherings comparable to religious gatherings, stating that in both circumstances, "large groups of people gather in close proximity for extended periods of time." *South Bay*, 140 S. Ct. at 1613.  The gatherings identified by Chief Justice Roberts are also comparable because people are arriving and departing at a similar time, and are often using their voices for speaking, chanting, or singing.  *See* Varma Dec. ¶ 20. Here, concert halls, movie theaters, and theatrical performances (and other similar indoor high-risk entertainment or gathering venues) are fully closed citywide, whereas houses of worship are open, even in red and orange zones. *See* Parodi Dec. Ex. "5"; Varma Dec. ¶ 20. Restaurants, which were allowed to resume indoor dining much later than houses of worship were allowed to resume indoor prayer, may not have any indoor dining in the red and zones, and are ultimately limited to 25% capacity across the City (even outside any of the designated zones). *See* Parodi Dec. Ex. "2" & "6." Even school buildings, which Plaintiffs argue are comparable, are fully closed in red and orange zones. Moreover, even when open, they are not operating at in-person full capacity, as they must comply with State guidelines that require them to maintain

appropriate social distancing and reduce capacity in certain spaces. *See* Parodi Dec. Ex. "7." Thus, when gatherings inside houses of worship are compared to actual comparable industries, it is clear that the subject Order is not underinclusive as religious gatherings are being treated no worse, and sometimes even better, that comparable secular gatherings.[13] *See South Bay*, 140 S. Ct. at 1613; *Elim Romanian*, 962 F.3d at 346.

Plaintiffs, however, argue that houses of worship and religious gatherings are comparable to essential services. However, houses of worship are not classified as essential businesses or services, but fall into the broad category of non-essential businesses. *See Elim Romanian Pentecostal Church v. Pritzker*, 962 F.3d 341 (7th Cir. 2020) (rejecting claim that religious services are comparable to essential services, including warehouses or homeless shelters, and finding that an order limiting religious worship to no more than ten people did not violate the Free Exercise Clause). Indeed, this Court, in deciding Plaintiffs' first motion for a preliminary injunction, compared religious worship with non-essential services. *See* ECF 35 at 29–30. Although Plaintiffs' claim that the decision incorporated arguments from their memo of law which claim that houses of worship should be compared to essential services, the relief the Court granted was that houses of worship be treated no differently than Phase 2 Industries (which had earlier been defined by the Court as non-essential industries authorized to open in Phase 2). *See* ECF Doc. No. 35 at 29–30, 37–38.   *See* Parodi Dec. Ex. "4" for information on Phase 2 Industries.

---

[13] Plaintiffs' statement that Defendant de Blasio has "announced" that "peaceful protests" are allowed under EO 202.68 is misleading. In the statement to which Plaintiffs cite, Defendant de Blasio stated that "[t]here's a place for peaceful protest, but the NYPD will not tolerate people doing harm to others. There will be no tolerance for assaults, for damage to property, for setting fires[.]" *See* Parodi Dec. Ex. "8." This statement was made in response to incidents involving crowds setting fires, blocking a city bus, and where one person was assaulted, and was clearly aimed at trying to discourage violent protests, and not sanctioning protests or any other large gathering. *See id.*

Furthermore, while Plaintiffs' claim the 7th Circuit's decision in *Elim* is based in an "impermissible secular value judgment (favoring food and shelter over in-person religious worship)" (Pls. Memo at 17) that simply makes no sense. Indeed, Plaintiffs themselves qualified "religious worship" by saying "in-person" since they know people can and do pray and practice their religion outside of houses of worship and not always in communal settings. While Plaintiffs prefer in-person and communal religious worship in larger groups than is permitted, food and shelter is not a preference, but a necessity. A person without food will starve, and a person without shelter will sleep outdoors in the elements, while Plaintiffs may continue to worship, just in smaller numbers than they consider ideal.

In any event, the decision as to what services and businesses are essential and what is non-essential is within the State's discretion. *See Roman Catholic Diocese of Brooklyn*, 20-cv-4844, at 20 (finding that "the court should not and will not parse the reasonable distinctions that the State has made, in very difficult circumstances, between essential and non-essential businesses"); *Dark Storm Indus. LLC v. Cuomo,* 2020 U.S. Dist. LEXIS 120514, at *38 (N.D.N.Y. July 8, 2020) (finding the essential versus non-essential designation a policy decision that courts are "loath to second-guess"). *Luke's Catering Serv. v. Cuomo*, 2020 U.S. Dist. LEXIS 165907, at *27 (W.D.N.Y. Sept. 10, 2020); *see also Calvary Chapel Dayton Valley v. Sisolak*, 2020 U.S. Dist. LEXIS 103234, at * 11 (D. Nev. June 11, 2020).

Finally, that a regulation "recognize[s] some exceptions cannot mean that the [government] has to grant all other requests for exemption to preserve the 'general applicability' of the regulation[]." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1135 (9th Cir. 2009); *see Ungar v. N.Y.C. Hous. Auth.*, 363 Fed. App'x 53, 56 (2d Cir. 2010). For example, in *Ungar*, the Second Circuit held that the method of assigning public housing on a first-come, first-served basis was

generally applicable, even though it included exceptions for victims of domestic violence, those living in substandard housing, and others. *See* 363 Fed. App'x at 56.

Third, no inference of targeting religion can be drawn. One must not forget that the analysis of whether a law is underinclusive is an attempt to ferret out the improper targeting of religion from an otherwise facially neutral and generally applicable law. *See generally Church of Lukumi,* 508 U.S. 520. Even if the subject Order has select exceptions, a conclusion that the law is not generally applicable cannot be drawn. One cannot infer improper targeting or "singling out a religious practice for special burdens," *Cent. Rabbinical*, 763 F.3d at 197, from such "inconsequential" underinclusivity. *Lighthouse Fellowship Church,* 2020 U.S. Dist. LEXIS 80289, at *26. (denying Church's TRO application to enjoin order limiting gatherings to ten or less and noting that even if the order was underinclusive it would be "inconsequential"). There are many other businesses and activities that are subject to limitations similar to or even more restrictive than the limitations on houses of worship. In fact, as noted above, houses of worship are treated more favorably than other non-essential businesses in the red zone, more favorably than restaurants in the designated zones and citywide, as well as more favorably than theaters and concert halls which remain closed altogether in the City. This simply is not a circumstance in which "the State has in place a system of individual exemptions," but it "refuse[s] to extend that system to cases of 'religious hardship'..." *Ass'n of Jewish Camp Operators,* 2020 U.S. Dist. LEXIS 117765 at *34 (N.D.N.Y. July 6, 2020) (quoting *Litzman v. New York City Police Dep't*, 12-CV-4681, 2013 U.S. Dist. LEXIS 162968, at *3 (S.D.N.Y. Nov. 15, 2013)). Consequently, the rational basis test is applicable and there is no question that the subject Order has a rational basis. *See Elim Romanian*, 962 F.3d at 346*; Ass'n of Jewish Camp Operators.* at *46 ("Defendant's interest in preventing the spread of COVID-19 is a legitimate interest"); s*ee also*

*Robinson v. Murphy*, 2020 U.S. Dist. LEXIS 185070, at *20 (D. N.J. Oct. 2, 2020); *Cassell v. Snyders*, 2020 U.S. Dist. LEXIS 77512, at *31 (N.D. Ill. May 3, 2020); *Legacy Church, Inc. v. Kunkel*, 2020 U.S. Dist. LEXIS 68415, at *88 (D. N.M. Apr. 17, 2020); *see also South Bay*, 140 S. Ct. at 1614.

Even if strict scrutiny were applicable, the subject Order is narrowly tailored to serve a compelling interest. After months of carefully reopening our state and maintaining low levels of infection in the State and the City, certain areas have seen significant increases in positivity rates. If the positivity rate is not reduced in those zones, COVID-19 will likely spread beyond those areas. As Dr. Varma explained, "[i]n geographic areas in which there is widespread transmission, efforts to minimize the frequency, duration, and intensity of contact within the community through "community social distancing" can substantially reduce infections, illnesses, and deaths." Varma Dec. ¶ 8. Dr. Varma further explained that "[w]hen a geographic area is identified as needing community social distancing measures, public health officials need to ensure that the restrictions take into account the fact that people on the outer edges of a zone border are likely to conduct activities on the other side of that border." Varma Dec. ¶ 13. Dr. Varma also explained the unique risk religious worship in houses of worship poses to the spread of COVID-19. *See* Varma Dec. ¶¶ 14–20. Thus, there is a compelling interest to prevent the spread of COVID-19 by returning to greater limitations in the zones, and in the houses of worship located in those zones.[14]

Moreover, the subject Order is narrowly tailored. It is directed at limited zones based upon current high positivity rates and the risk of spread. The limitations imposed are graduated, becoming progressively less stringent in the "moderate severity" (orange) and "precautionary"

---

[14] Indeed, this Court noted Plaintiffs' acknowledgment that efforts to prevent the spread of COVID-19 are "compelling interests to the highest order." ECF 35 at 26.

(yellow) zones. Finally, Plaintiffs are never outright prohibited from gathering for religious worship, and the Jewish Plaintiffs may have their minyan of ten people.[15] While Plaintiffs' lawyers claim that Plaintiffs will remain committed to social distancing and hygiene practices, (Pls. Memo at 21), notably the plaintiffs themselves in their declarations in support of this motion did not make any such representation. Further, Plaintiffs' lawyers' representation does not indicate that Plaintiffs will wear face coverings, which is an essential part of preventing the spread of the virus, *see* Varma Dec. at 15, and is required by law. *See* Parodi Dec. Ex. "9."[16] Thus, the subject Order is narrowly tailored to serve a compelling government interest and is thus passes strict scrutiny. Therefore, Plaintiffs are not likely to succeed on the merits of their Free Exercise Clause claim. *See Ass'n of Jewish Camps Operators,* 2020 U.S. Dist. LEXIS 117765 at *47-*49.

**B.     Plaintiffs' Freedom of Speech, Assembly, and Expressive Association Claims Fail**

Plaintiffs' freedom of speech, assembly and expressive association claims also fail. As noted above, the *Jacobson* framework applies in this case. Under such analysis, the challenged limitations at issue do not violate Plaintiffs' First Amendment rights to freedom of speech, association and assembly, as the subject Order was enacted to protect the public health against the spread of COVID-19 and is clearly substantially related to such purpose. *See* Parodi Dec. Ex. "2." Accordingly, the subject Order passes *Jacobson*'s deferential review.

Moreover, even if Plaintiffs' freedom of speech and assembly claims were analyzed under the framework traditionally applicable to restrictions on speech in public forums, the gathering limitation does not violate the First Amendment. Under the traditional framework

---

[15] In the red zone, if 25% capacity is less than 10 people, a minyan may not be possible.
[16] Additionally, although Plaintiffs' lawyer may represent that Plaintiffs will comply with social distancing and hygiene practices, the purpose of this motion is to allow larger communal worship. However, Plaintiffs cannot ensure that those they will worship with will also comply with such practices.

applicable to restrictions on speech in public forums, if a restriction on speech is content-based, it must pass strict scrutiny—that is, it will be upheld if the restriction is necessary to serve a compelling state interest. *See Hobbs v. County of Westchester*, 397 F.3d 133, 149 (2d Cir. 2005). However, if the restriction is content-neutral, it must only pass intermediate scrutiny—or, in other words, the restriction will be upheld so long as it is reasonable, serves a substantial government interest that would be achieved less effectively otherwise, and leave open ample alternative channels of communication. *See id.* "A regulation that serves a purpose unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989); *see also Hobbs*, 397 F. 3d at 150.

Here, the subject Order is content-neutral as it does not apply to any particular speaker based upon the content of his or her speech. Plaintiffs' assertion that the subject Order is content-based because it's based on the "communicative content" of speech misreads the subject Order—in "red zones" *all* non-essential gatherings are banned, with houses of worship allowed to have 25% of maximum occupancy, or 10 people, whichever is less. <u>See</u> Parodi Dec. Ex. "2." In *Geller v. De Blasio* (hereinafter "*Geller I*"), where the plaintiff challenged the emergency gathering limitation that prohibited gatherings of *any* size, the S.D.N.Y. held that the gathering limitation was content neutral and passed intermediate scrutiny. *See Geller I*, 2020 U.S. Dist. LEXIS 87405 (S.D.N.Y. May 18, 2020) ; *see also Martin v. Warren*, 2020 U.S. Dist. LEXIS 154979 (W.D.N.Y. Aug. 26, 2020) (finding that First Amendment challenge to an Emergency Order restricting gathering in Rochester between hours of 11:00 p.m. and 5:00 a.m. was not likely to succeed, when viewing it through the "lens" of *Jacobson*); *Murphy v. Lamont*, 2020 U.S. Dist. LEXIS 136961 (D. Conn. Aug. 3, 2020) (finding that challenged state Executive Orders did not

violate freedom of speech or assembly, as they were content-neutral, narrowly tailored to serve a significant government interest, and leave open alternative channels for communication). Accordingly, the subject Order is content-neutral.

The subject Order clearly passes the applicable intermediate scrutiny for content-neutral regulations. Countless courts have recognized that limiting the spread of the COVID-19 virus is a governmental interest of the utmost importance. *See, e.g., Martin,* 2020 U.S. Dist. LEXIS 154979; *Murphy,* 2020 U.S. Dist. LEXIS 136961; *Geller I,* 2020 U.S. Dist. LEXIS 87405, at*10. The subject Order has limited activities and gatherings in the zones based on the important government interest of preventing the spread of COVID-19 in areas where positive test rates have increased. *See* Varma Dec. at ¶ 4. Indeed, gatherings in houses of worship pose a unique risk for the spread of COVID-19 and thus must be restricted. *See* Varma Dec. ¶ 14.

Plaintiffs' assertion that the subject Order burdens substantially more speech than is necessary to further the government's legitimate interest is without merit. *See* Pls. Memo at 23. The greatest limitations are imposed in the areas with the greatest positivity rate (red zones), and are reduced in orange zones, and further reduced in yellow zones. Moreover, as Plaintiffs' note, the subject Order allows for the minimum quorum of ten adult males, or a *minyan*, in red zones. *See* Pls. Memo at 24. Though Plaintiffs assert that the "Jewish plaintiffs' children," along with infant plaintiffs P.L. and G.L., are unable to receive a proper religious education at all in the Red and Orange Zones," it must be noted that the subject Order does not prohibit remote schooling in any of the zones. *See id.*; Parodi Dec. Ex. "2." Thus, it is clear that the subject Order is narrowly-tailored to achieve the purpose of preventing the spread of COVID-19, and does not burden more speech than necessary. *See Geller II*, 2020 U.S. Dist. LEXIS 137863, at *28; *McCarthy v.*

*Cuomo*, 2020 U.S. Dist. LEXIS 107195, at *12 (E.D.N.Y. June 18, 2020); *Geller I*, 2020 U.S. Dist. LEXIS 87405, at *4.

Likewise, though Plaintiffs do not address their expressive association claim in their TRO motion, Plaintiffs are not likely to succeed on their freedom of expressive association claim, as the subject Order serves the compelling state interest of reducing the spread of COVID-19, that governmental interest is wholly unrelated to the suppression of ideas, and the governmental purpose of slowing the spread of COVID-19 cannot be achieved through means significantly less restrictive of associational freedoms. *See Legacy Church, Inc. v Kunkel*, 2020 U.S. Dist. LEXIS 122542, at *303-*304 (D.N.M. July 13, 2020) (finding that the regulation "supports a compelling government interest—combatting local outbreaks of the coronavirus amidst a global pandemic"). Accordingly, Plaintiffs' freedom of speech, assembly and expressive association claims fail.

**C.**   **Plaintiffs' Equal Protection and Substantive Due Process Claims Fail**

Plaintiffs do not address their equal protection or substantive due process claims in their TRO motion.[17] However, even if considered, Plaintiffs are likewise not likely to succeed on these claims.  First and foremost, as noted above, Plaintiffs' First Amendment claims fail. Where a plaintiff's First Amendment claim fails and the plaintiff failed to show that he or she is a member of a suspect class, a court will only apply rational basis scrutiny in its subsequent review of an equal protection claim.  *See, e.g., St. John's United Church of Christ v. City of Chicago*, 502 F. 3d 616, 638 (7th Cir. 2006); *Pharaohs GC, Inc. v. United States SBA*, 2020 U.S. Dist. LEXIS 112480, at *22-*23 (W.D.N.Y. 2020). As discussed above, the subject Order passes the rational basis test. Similarly, to the extent Plaintiffs allege an equal protection claim based upon selective enforcement claim against City Defendants, such claim is also not likely to succeed. As explained above when addressing the free exercise claim, the activities and businesses Plaintiffs

---

[17] Though it is not clear, Plaintiffs appear to allude to a substantive due process claim in the FAC.

compare gatherings in houses of worship to are not comparable. *See Green v. LaClair*, 2012 U.S. Dist. LEXIS 42876, at \*34 (N.D.N.Y. 2012) ("a plaintiff 'must present evidence that he was treated differently from similarly situated members of other religions.'") (citations omitted). Nor, also as discussed above, will Plaintiffs be able to establish that the purported differential treatment was based on impermissible considerations, such as race or religion. *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 790 (2d Cir. 2007) (internal citations omitted); *see also Luke's Catering Serv. v. Cuomo*, 2020 U.S. Dist. LEXIS 165907, at \*3, \*30 (W.D.N.Y. 2020)

Finally, as Plaintiffs' First Amendment claims fail as a matter of law, they do not have a cause of action for substantive due process. *See Rother v. NYS Dep't of Correction and Community Supervision*, 970 F. Supp. 2d 78, 100 (N.D.N.Y. 2013) (holding that "[b]ecause the claim for substantive due process is subsumed by Plaintiff's other constitutional claims, it must be dismissed").

## D.    The Balance of the Hardships Tip Decidedly in the City's Favor

Aside from the fact that Plaintiffs are not likely to succeed on the merits of their claims, any harm to Plaintiffs is substantially outweighed by the City's significant interest in protecting the public during this unprecedented public health emergency—and to combat any resurgence in COVID-19 (as reflected by the percent positivity). Indeed, as courts across the country have recognized, the City has a compelling interest of the utmost important—to slow the spread of a deadly virus that has killed hundreds of thousands of Americans. *See, e.g., Ass'n of Jewish Camp Operators*, 2020 U.S. Dist. LEXIS 117765, at \*46; *Martin,* 2020 U.S. Dist. LEXIS 154979; *Murphy*, 2020 U.S. Dist. LEXIS 136961. Accordingly, given the City's paramount interest in protecting the public health, and the City's interest in avoiding another "lockdown" which would result in great economic stress on the State and its residents, the balance of the hardships tips

decidedly in the City Defendants' favor. *See Roman Catholic Diocese of Brooklyn, NY v. Cuomo*, 20-cv-4844, at 24.

**E.     The Court Should Not Enter a Civil Order of Contempt against City Defendants**

Plaintiffs also "suggest this Court enter a *sua sponte* civil order of contempt against defendants for their blatant violation of this Court's June 26 Order." *See* Pls. Memo in Support of Plaintiffs' Motion for a Temporary Restraining Order at 1. But they have failed to demonstrate any ground for such an order.[18]

A court's power to impose a contempt order is only warranted if the moving party establishes by "clear and convincing evidence that the alleged contemnor violated the district court's edict." *United States v. N.Y. City Dist. Council of N.Y.C.*, 229 Fed. Appx. 14, 18 (2d Cir. 2007). It is well settled that a party may be held in civil contempt for a failure to comply with an order of the court if: (1) the order being enforced is "clear and unambiguous," (2) the proof of non-compliance is "clear and convincing" and (3) the defendants have not diligently attempted to comply in a reasonable matter. *Id.*, *New York State NOW v. Terry*, 886 F. 2d 1339, 1351 (2d Cir. 1989); *EEOC v. Local 638*, 753 F. 2d 1172, 1178 (2d Cir. 1984). As the Second Circuit has noted, a contempt order is a "potent weapon" and imposition of a contempt order is "inappropriate if there is a fair ground of doubt as to the wrongfulness of the defendant's conduct." *US v. N.Y. City Dist. Council of NYC*, 229 Fed. Appx. at 17 (citations omitted).

Here, Plaintiffs have not established by "clear and convincing" evidence that Defendant Mayor de Blasio violated the Court's June 26, 2020 Order. Indeed, all Plaintiffs have alleged is

---

[18] Although City Defendants have briefly responded to Plaintiffs' "request," and believe there is no basis for an order of contempt, in the event the court is inclined to seriously consider such request, we respectfully ask that Plaintiffs be required to submit formal briefing including allegations of how and when City Defendants violated the terms of the preliminary injunction, and that City Defendants have an opportunity to respond to those specific allegations.

that "defendants' new, draconian imposition on plaintiffs' religious gatherings are in direct violation of this Court's June 26, 2020 Order" and that "Defendants have completely ignored and violated this Court's preliminary injunction entered in favor of the original plaintiffs." *See* Pls. Memo at 1–2. However, Plaintiffs have failed to point to any enforcement action taken by City defendants against Plaintiffs Soos, Stamos, Schonbrun, Perr, or Mayerfeld (the Plaintiffs subject to this Court's June 26, 2020 Order).  In red zones, houses of worship are permitted to remain open for communal worship on a limited basis, while non-essential "Phase 2 industries" are required to close. Enforcement of this restriction therefore complies with the preliminary injunction's requirement that Plaintiffs' houses of worship be treated no worse than "Phase 2 industries." Moreover, as noted by Defendant de Blasio's October 8, 2020 Status Report, regarding orange zone, in an abundance of caution to comply with this Court's preliminary injunction, *see* ECF Doc. 55, the City is not taking enforcement action against houses of worship unless they are at greater than 50% capacity, the same capacity limit imposed on non-essential business in orange zones. *See* ECF. 55. Thus, the City has not acted in violation of this Court's preliminary injunction.

## <u>CONCLUSION</u>

For the foregoing reasons, City Defendants respectfully request that this Court deny Plaintiffs' "request" for a *sua sponte* order of contempt, deny Plaintiffs' motion for a temporary restraining order and preliminary injunction, for the Court to confirm that the subject Order can be fully enforced according to its terms, or, in the alternative, to the extent full enforcement of the subject Order would conflict with this Court's prior preliminary injunction, that the

preliminary injunction be modified to permit full enforcement of the subject Order,[19] together

with such other and further relief as this Court deems just and proper.

Dated:      New York, New York
          October 20, 2020

                        JAMES E. JOHNSON
                        Corporation Counsel
                          of the City of New York
                        *Attorney for City Defendants*
                        100 Church Street
                        New York, New York 10007
                        (212) 356-4371

                  By:_____/s/_____
                        MELANIE V. SADOK (admitted *pro hac vice*)
                        ELLEN PARODI (admitted *pro hac vice*)
                        Assistant Corporation Counsels

---

[19] City Defendants note that, as the Court's June 26, 2020 Order is currently pending appeal.  *See* ECF 45 & 46. Pursuant to Federal Rules of Civil Procedure 62.1, before a modification of the June 26, 2020 Order can be made, a a remand from the Second Circuit Court of Appeals would be necessary. To the extent that a modification is necessary, the City Defendants request that the Court provide an indicative ruling that it would grant such a modification, or at least that this modification request raises a substantial issue.